Eastern District of Kentucky
**FILED**

MAY 1 0 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

**NOT FOR PUBLICATION OR CITATION**

CIVIL ACTION NO. 05-CV-041-KSF

PHILLIP BOAZ                                            PLAINTIFF

VS:                  **MEMORANDUM OPINION AND ORDER**

DONNIE LOUIS, ET AL.                                DEFENDANTS

The plaintiff, a state inmate confined at the Lee Adjustment Center in Beattyville, Kentucky, has filed a complaint pursuant to 42 U.S.C. §1983.

The plaintiff makes two Eighth Amendment claims. First, he alleges that deliberate indifference has been exhibited to his serious medical needs, in violation of the Eighth Amendment, because his alleged December 2, 2004 back injury was not x-rayed until January 14, 2004, and in that interim he did not receive appropriate medical treatment which caused him to experience great pain. The plaintiff also alleges that he has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment, because he was directed to step out of a van without his restraint chains being appropriately adjusted and without a milk-crate step having been provided and, thus, he incurred an injurious fall.

The plaintiff also alleges state tort claims of negligence.

The named defendants are Corrections Corporation of America and the Lee Adjustment Center and their employees: Corrections Officer Donnie Parks, Sargeant Donnie Louis, Dr. Bart Francis, Warden Randy Stovall, and Secretary Melodi Turner. The employees are each named in both their individual and official capacities.

The plaintiff seeks damages, injunctive relief, and costs.

## FACTUAL ALLEGATIONS

The following is a summary of the plaintiff's factual allegations underlying his claim.

The plaintiff alleges that at approximately noon on December 2, 2004, he was being transported from his parole hearing at the Eastern Kentucky Correctional Complex ("EKCC") back to his assigned institution, the Lee Adjustment Center ("LAC"), in the LAC van. Prior to leaving EKCC, the plaintiff allegedly told Correctional Officer Donnie Parks that his waist chain was too loose and that it was falling down around his legs and ankles because his jumpsuit was without the usual chain-holding loops. The plaintiff explained that this was making it difficult to walk. Officer Parks responded they did not have time to make the requested adjustments and for the plaintiff to "just stick it out." At around noon, the van arrived at LAC. Sargent Louis and Officer Parks opened all back doors of the van and ordered all inmates to get out. It is unclear whether other inmates exited the van before the plaintiff, or whether they were afforded assistance and/or use of the milk-crate step. When it was the plaintiff's turn to exit the van, the plaintiff asked "the staff" to please put down the milk crate which he claims was "normally used for a step for inmates transported." He also asked to be helped out of the van. Sargent Louis responded, "You're a big boy now and stop crying. Let's go." The plaintiff attempted to exit the van and fell, face-first, to the ground. Sargent Louis' response was to laugh.

Shortly after the fall, on December 2, 2004, at 12:42, the plaintiff was afforded medical treatment within the institution. He was treated for scraped knuckles, edema to his right wrist and chin, and abrasion. He complained of wrist and hand pain. His wounds were cleaned and dressed, he was prescribed ten days' worth of medication, and instructions were given to return him for an

x-ray of his wrist. *Plaintiff's Exhibit A*. Also on December 2, 2004, the plaintiff was transported to Marcum Wallace Medical in Louisville, Kentucky, for x-rays. His December 2, 2004 radiology report establishes that x-rays of his right and left hands and wrists were negative and did not show breaks. *Id.*

On December 3, 2004, the plaintiff came to medical reporting rib pain, left side pain, and right shoulder pain, all of which had developed since the December 2, 2004 fall. The plaintiff was rendered medical attention on December 6 and 7, 2004.

On December 8, 2004, the plaintiff was again afforded medical treatment within the institution for new back pain manifesting since a "trauma" on December 2, 2004. *Id.* The plaintiff was referred to Dr. Francis for a December 10, 2004 appointment.

On December 9, 2004, the plaintiff was afforded medical treatment within the institution for back pain. He reported that he needed the assistance of two inmates to get to and from the bathroom. At about this time, the plaintiff's housing assignment became within the medical unit of the institution.

On December 10, 2004, the plaintiff's Health Services Notes indicate that he reported that his pain had "eased up." He reportedly slept the entire night without complaints. His health notes also indicate that he made no complaint of back pain immediately after the December 2, 2004 fall and that on December 6, 2004, he walked without difficulty from the "OB to exam room." A notation is made on the December 10, 2004 chart that "no serious medical injuries are clinically evident. X-rays of wrists/hands - [negative]. Patients c/o [complaints of] pain are not consistent with observed activity while in medical observation under camera monitoring. Reinforce that no serious medical need exists for further testing or referral. . . pt.[patient] notes he is physically able

to rejoin inmate population." The plaintiff was prescribed "Flexiril 10 mg" for seven days and was ordered "bed rest" for two days. *Id.*

On December 13, 2004, the plaintiff was released from medical after the plaintiff had stayed five days in the medical unit of the prison. *Id.*

On December 17, 2004, Correctional Officer Dan Newsome, an officer who accompanied the plaintiff to Louisville for x-rays on December 2, 2004, apparently signed an "incident statement" for the plaintiff. *Plaintiff's Exhibit B.* That statement said that on December 2, 2004, though the plaintiff complained of his back hurting, no x-ray was done of his back and that only his hands and arms were x-rayed at that time. *Id.* Also on December 17, 2004, the plaintiff filled out a "sick call request" in which he complained his back was "still locking up." He claimed he had had this problem since "After Dec. 02, 2004." *Id.* The plaintiff sought treatment for his back.

On December 21, 2004, the plaintiff again filled out a "sick call request." At that time, his stated reason for seeking health services was that he had seen the doctor on December 20, 2004, about his "progressing back problems" and that the doctors merely kept telling him that "you'll be alright." *Id.* He claimed his back was still "locking up and popping" and that he had had this problem since December 2, 2004. *Id.* He asked for medical to "please stop refusing me appropriate medical attention. Still no x-ray on back." *Id.*

On December 22 and 31, 2004, the plaintiff filled out "sick call requests" complaining of back pain. On January 3, 11 and 13, 2005, the plaintiff filled out "sick call requests" on the same subject.

According to a notation made in what appears to be the plaintiff's handwriting on a January 12, 2005 "Health Care Grievance Committee Findings and Recommendation" attached to the

plaintiff's complaint, the plaintiff "finally received an x-ray on back 01-12-05." The plaintiff's complaint (at attached page) claims his back was x-rayed on January 14, 2004. It is presumed the plaintiff intended to say 2005. The plaintiff fails to assert the results of those back x-rays.

<u>DEFENDANTS CCA, LAC, and the INDIVIDUALS IN OFFICIAL CAPACITIES</u>

The plaintiff has named as defendants the Corrections Corporation of America and its institution, the Lee Adjustment Center.

The plaintiff's claims of deliberate indifference to serious medical needs, in violation of the Eighth Amendment, must be dismissed insofar as they are brought against the Corrections Corporation of America and/or the Lee Adjustment Center and/or the named defendants in their official capacities for damages, because the plaintiff did not allege that his medical treatment, or the alleged lack thereof, was the result of any policy or custom of CCA. *Thomason v. Coble, et al.*, 100 Fed.Appx. 522, 2004 WL 1327864 (6th Cir. (Tenn.)) (citing *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.E#d.2d 611 (1978); *Taylor v. Mich. Dep't. Of Corr.*, 175 F.3d 378, 394 (6th Cir. 1999).

The plaintiff's claims that he has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment, because his restraints were not adjusted and the milk-crate step was not put down before he attempted to exit the van must be dismissed insofar as they are brought against the Corrections Corporation of America and/or the Lee Adjustment Center and/or the named defendants in their official capacities for damages, because the plaintiff did not allege that his treatment was the result of any policy or custom of CCA. *Id.* In fact, the plaintiff alleges that it *was* the policy and custom of CCA and LAC to hold restraint chains in place with jumpsuit loops and to assist prisoners exiting the van with a milk-crate step, but that Defendants Louis and Parks

individually chose to contravene those CCA and/or LAC customs. Consequently, CCA, LAC, and all of the defendants in their individual capacities for damages must be dismissed in conjunction with the Eighth Amendment cruel and unusual punishment claim.

## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

The plaintiff alleges that deliberate indifference has been exhibited to his serious medical need for a back x-ray because, though he fell on December 2, 2004, he was not afforded a back x-ray until January 12 or 14, 2005.

The Supreme Court has held that "[i]n order to state a cognizable claim [under the Eighth Amendment with regard to medical care] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Therefore, a prisoner must show both "deliberate indifference" and "serious medical needs." *Id.*

The plaintiff has not established that he ever had a serious medical need for a back x-ray. The physician's notes of December 10, 2004, suggest it was suspected that the plaintiff was malingering. Additionally, although the plaintiff did finally receive the requested back x-ray on January 12 or 14, 2005, the plaintiff has failed to plead the results of that x-ray. The plaintiff has failed to plead that the back x-ray he received established that he, in fact, did have a serious back injury. As the plaintiff has completely failed to plead a necessary component of his Eighth Amendment deliberate indifference to serious medical needs claim, it must be dismissed.

Moreover, the plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim is subject to dismissal because he has failed to allege any detrimental effect from the delay in his receipt of the back x-ray. *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d

251 (1976); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The plaintiff was afforded a substantial amount of medical attention. At most, the plaintiff has alleged a difference in opinion between the plaintiff and his health care provider regarding the expediency of specific treatment (receipt of a back x-ray). This does not generally create a constitutional claim. *See Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir.1976); *Mack v. Wilkinson*, 2004 WL 232730, *1 (6th Cir.(Ohio (C.A.6 (Ohio),2004) (unpublished).

Consequently, the plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim must be dismissed as to all defendants.

## CRUEL AND UNUSUAL PUNISHMENT

The plaintiff generally alleges he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment.

The plaintiff is not specific about which of the complained-of behaviors he deems to be the basis of this Eighth Amendment claim, as opposed to his Eighth Amendment deliberate indifference to serious medical needs claim. Presumably, the plaintiff is claiming that Sargent Louis and Officer Parks rendered cruel and unusual punishment to the plaintiff when they failed to adjust his chain restraints due to a lack of time, and when they failed to put a milk-crate step down, and when they failed to heed the plaintiff's requests for assistance in exiting the van on December 2, 2004.

Under the Eighth Amendment, punishment of a convicted criminal must be "barbarous" or contravene society's "evolving standards of decency" to constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981). Prison officials are prohibited from punishing in a manner involving the "unnecessary and wanton infliction of pain." *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (citing *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)); *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. at 346). Eighth Amendment cruel and unusual punishment involves only "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348.

The plaintiff's Eighth Amendment cruel and unusual punishment conditions of confinement claims do not rise to the level of a constitutional violation. *See Moore v. Holbrook*, 2 F.3d at 700 (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2324 (1991)). The offending conduct must be wanton and constitute "malicious and sadistic acts whose very purpose is to inflict harm." *Moore* at p. 700 (citing *Estelle v. Gamble*, 429 U.S. 97 (1976) and *Wilson v. Seiter*, 501 U.S. at 297-99). The conduct of Defendants Louis and Parks was not so much to inflict harm as it was to expedite prisoner movement. The plaintiff makes no allegations that he was afforded different treatment than the other inmates exiting the van that day. The plaintiff makes no assertions that the treatment he was afforded was less than that afforded to other similarly situated inmates. The plaintiff does not allege that his jumpsuit was intentionally designed by Louis and Parks to lack chain-holding loops. The plaintiff does not allege that it is a generally known fact that prisoners without milk-crate steps fall out of vans. There are no allegations that Louis and Parks made the choices and decisions that they made about not readjusting the plaintiff's restraints and not putting

down the milk-crate step because they were conspiratorily motivated by a wanton and sadistic desire to inflict injuries upon the plaintiff because they knew, in advance, that the consequences of their choices would highly likely inflict the produced harm upon the plaintiff.

<u>Defendants: Dr. Francis, Warden Stovall, Secretary Turner</u>

The plaintiff apparently brings this Eighth Amendment cruel and unusual punishment claim against CCA and LAC officials: Dr. Bart Francis, Warden Randy Stovall, and Secretary Melodi Turner. The plaintiff, however, has not pled nor established that any of these named defendants had any personal involvement in any of the van-exiting actions. The plaintiff did not allege that these defendants' conduct caused him to be deprived of any constitutional right. *See Thompson, et al. v. County of Medina, Ohio, et al.*, 29 F.3d 238 (6th Cir. 1994); *see also Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991) (per curiam), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 872 (1992). "[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn v. Madison Cty. Fiscal Ct., et al.*, 22 F.3d 653, 659 (6th Cir. 1994) (citing *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 550 (6th Cir. 1992), *cert. denied*, 113 S.Ct. 187 (1992); *see also Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305-308 (1986)). When the theory of causation is a matter of pure speculation and is nothing more than a hypothetical argument, the pleadings are insufficient to sustain a compensable section 1983 claim. *Horn* at 659 (citing *Sullivan County, supra*, 956 F.2d at 550. "When monetary damages are sought under section 1983 . . . a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2nd Cir. 1973). A plaintiff must prove that a particular defendant was personally involved in the deprivation of his rights. *Id.* Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's

rights. A plaintiff must demonstrate that the defendant proximately caused his alleged injuries. *White v. Gerbitz*, 892 F.2d 457, 463 (6th Cir. 1989). A 42 U.S.C. §1983 complaint must allege that specific conduct by the defendant was the proximate cause of the §1983 injury. *King v. Massareh*, 782 F.2d 825, 829 (9th Cir. 1986). When a complaint merely lists multiple defendants and then describes at length the facts generally, without naming the specific defendants involved in each event and without setting forth with particularity which acts by each defendant caused each constitutional deprivation, the complaint is insufficient. *See Id.* "Congress did not intend §1983 liability to attach where causation is absent." *Deaton, et al. v. Montgomery Cty., et al.*, 989 F.2d 885, 889 (6th Cir. 1993). To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged." *Id.*

The plaintiff has not set forth any actions by Defendants Francis, Stovall, or Turner that indicate they had any personal involvement in the van-exiting incident. The plaintiff must allege that supervisors condoned, encouraged or participated in the alleged misconduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989). "[T]he law is clear that liability of supervisory personnel must be based on more than merely the right to control." *Hayes v. Jefferson County, Kentucky*, 668 F.2d 869, 872 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Supervisory personnel are liable for constitutional violations only where evidence establishes that they authorized or approved the unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert. denied*, 110 S.Ct. 2173 (1990); *Poe v. Haydon*, 853 F.2d 418 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989); *Aliot v. City of Shively*, 835 F.2d 1173, 1175 (6th Cir. 1987). Moreover, "[a] supervisory employee cannot be held liable under §1983 for the constitutional torts of those he supervises unless it is shown 'that the supervisor encouraged the specific incident of misconduct or

in some other way directly participated in it.'" *Searcy, et al. v. City of Dayton, et al.*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984)). Supervisory personnel are not liable for every misdeed of their employees and agents. *Garner v. Memphis Police Dept., et al.*, 8 F.3d 358 (6th Cir. 1993). The plaintiff has not sufficiently pled this action for it to go forward against the Defendants Francis, Stovall, and Turner in their individual capacities for damages. The plaintiff has failed to set forth how any of these named defendants personally rendered cruel and unusual punishment to the plaintiff. Consequently, this action must be dismissed insofar as it is brought as an Eighth Amendment cruel and unusual punishment claim against Defendants Francis, Stovall, and Turner in their individual capacities for damages.

### Cruel and Unusual Punishment Conclusion

Because the plaintiff has insufficiently pled his Eighth Amendment cruel and unusual punishment claim to establish exactly what incidents are the basis of this claim and which defendants are allegedly responsible, and because the offenses complained of by the plaintiff against Defendants Louis and Parks fail to meet the standard of wantonness and sadism necessary to support such a claim, the plaintiff's Eighth Amendment cruel and unusual punishment claims must be dismissed insofar as they are brought against all of the named defendants. *See Federal Rules of Civil Procedure 8(a) and (e)*.

### STATE TORT CLAIM OF NEGLIGENCE

It appears the plaintiff is asserting a state tort claim of negligence.

A mere violation of state law will not establish a proper claim pursuant to 42 U.S.C. §1983. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citing *Conley v. Williams*, 28 F.3d 1213 (6th

Cir. 1994) (unpublished opinion)). The violation of state law, without more, is not a constitutional violation for purposes of section 1983. *White v. Gerbitz*, 892 F.2d 457, 459 (6th Cir. 1989) (citing *See, e.g., Clark v. Link*, 855 F.2d 156 (4th Cir. 1988) (mere violation of state law does not necessarily give rise to section 1983 claim.)). 42 U.S.C. §1983 is not an avenue for redress of tort claims against the government or public officials. *See Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993). Facts giving rise to state law tort claims do not necessarily give rise to constitutional torts under §1983. *Gazette v. City of Pontiac*, 41 F.3d 1061, 1067 (6th Cir. 1994). "[N]ot every tort by a state official is a constitutional violation, and . . . the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Whaley v. County of Tuscola*, 58 F.3d 1111 (6th Cir. 1995), *cert. denied*, 116 S.Ct. 476 (1995) at 1117 (quoting *Paul v. Davis*, 424 U.S. 693, 700-01 (1976)).

Absent any other basis for jurisdiction, federal courts do not have jurisdiction over actions regarding "duties that are analogous to those traditionally imposed by state tort law." *Lewellen v. Metropolitan Govt., et al.*, 34 F.3d 345, 351 (6th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citations omitted)). Without more, federal courts are not an avenue for redress of tort claims. *See Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993).

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

This action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the defendants.

This the 10th day of May, 2005.

_____
KARL S. FORESTER, SENIOR JUDGE